In The Interest of J.D.H., A Child.

No. 09 82 091 CV.

Court of Appeals of Texas, Beaumont.

Oct. 20, 1983.

James Dean Holland, pro se.

Jess Williams, Family Law Section, Dist. Attorney's Office, Beaumont, for appellee.

## OPINION

DIES, Chief Justice.

This is an appeal from a July 2, 1982, decree of termination of parental rights.

*TEX.FAM.CODE ANN. § 15.02* (Vernon Supp.1982–1983) sets out the requisite findings upon which a court must base an order of involuntary termination of parental rights. *Paragraph (1)* of that section requires a court finding on any one of the specific fact situations set forth therein and *paragraph (2)* requires a court finding that the "termination is in the best interests of the child." The trial court's order in this cause was based on findings of *two* of the fact patterns set forth in *paragraph (1)* and the finding required in *paragraph (2)*, that the termination was in the best interests of the child. The trial judge's two *paragraph (1)* findings are set out in (B) and (E) of that paragraph: that the parent, appellant, had "(B) voluntarily left the child alone or in the possession of another not the parent without expressing an intent to return, without providing for the adequate support of the child, and remained away for a period of at least three months" and had "(E) engaged in conduct ... which endangers the physical or mental well-being of the child."

Four of appellant's points of error attack the sufficiency of the evidence to support the trial court's findings made under *Sections 15.02(1)(B), 15.02(1)(E), and 15.02(2).* In an involuntary termination case we apply the clear and convincing evidence standard in reviewing the proof. *In the Interest of G.M.,* 596 S.W.2d 846 (Tex. 1980). This appellate review standard is a reflection of the fact that the district courts are vested with wide discretion in determining child custody cases, including situations which involve the removal of a minor from his or her parent's custody. *Page v. Sherrill,* 415 S.W.2d 642, 644–645 (Tex.1967). The reason for such determinations resting within the court's discretion, when he sits as the trier of fact, is that "the trial court is in the best position to observe the demeanor

and personalities of the witnesses and can 'feel the forces, powers, and influences that cannot be discerned by merely reading the record.' [citation omitted]" *Jeffers v. Wallace,* 615 S.W.2d 252, 253 (Tex.Civ.App. —Dallas 1981, no writ).

■ As to appellant's sufficiency of the evidence challenges under *Sections 15.- 02(1)(B), 15.02(1)(E), and 15.02(2),* assuming, arguendo, that the trial court properly found termination to be in the best interests of the child under *Section 15.02(2),* then the termination is sustainable if *either* the *Section 15.02(1)(B)* finding or the *Section 15.02(1)(E)* finding is supported by clear and convincing evidence. Our perusal of the record reflects that the trial court's findings, made under *paragraph (1)(E),* have unquestionably strong evidentiary support. One of the many findings the court made pursuant to the aforementioned statute is as follows:

"I ... find as a fact, by clear and convincing evidence, that [appellant] has engaged in a course of willful criminal activity starting as early as 1969 when he attempted to murder his stepfather; in 1969 when he was convicted of statutory rape ... and, further, for the sexual abuse and rape conviction of a five year old for which he is currently serving a 12-year sentence."

This "course of criminal activity finding" is supported by testimony elicited from the appellant which appears in the statement of facts. The court's corresponding conclusion of law to the aforementioned fact finding is as follows:

"I find that [appellant's] actions ... of willful engagement in a long series of criminal activities are such actions that have endantered [sic] the emotional and physical well-being of the child...."

In support of the trial court's abovementioned conclusion of law, there is testimony from a psychologist that outbursts of violence that the child has had are direct manifestations of his inability to deal with the fact that his father is in prison and the fact that his father was a very violent person. The psychologist's testimony also indicates that the child is probably aware of the reason for appellant's incarceration and that he feels "very threatened by [his] father ...." A child placement worker with the Department of Human Resources testified that "[the child] says that his father is going to come back and get him and he does not want that. In fact, he even asked that we not use ... his last name. He lived at Boys Haven under another name because of this fear .... He says to me that his father is a bad person and his father is going to come back and get him. He even has nightmares about it." These nightmares, according to the placement worker's testimony, had occurred "at least once every six weeks." The child had even expressed to the worker his fear that his father was going to kill him. There is additional testimony in the record which supports the trial court's findings made under *paragraph (1)(E).*

■ The case of *In the Interest of B.J.B.,* 546 S.W.2d 674 (Tex.Civ.App.—Texarkana 1977, writ ref'd n.r.e.), supports our view in this case regarding sufficiency of the proof under *Section 15.02(1)(E).* The Texarkana Court, in that case, at 677, decided that the trial court had properly terminated the father's parental rights where the father had stabbed the children's mother, and the children were not necessarily present at the time of the stabbing. The Court noted evidence in the record that the children were quite upset by their father's conduct and that they had a great fear of men resembling their father. Chief Justice Chadick, in writing for the Texarkana Court, stated, at 677:

"[T]he trial judge might reasonably conclude from common knowledge and experience that the fears and anxieties of the children evidenced emotional damage ... and that if the father's relationship was not ... terminat[ed] ... the children's emotional well-being would be further endangered. Also, the father's demonstrated want of self control and propensity for aggression and vicious, cruel, brutal violence against one who did not conform to his will projected a threat that

might reasonably be construed as endangering the physical well-being of children in his care, custody and control."

Similarly, in the case at bar, we are faced with a father who has demonstrated a pattern of violent behavior and a child who has clearly suffered emotional scars as a result of his father's brutal doings. We agree with the *In the Interest of B.J.B.* opinion and believe that it adds credence to our ruling that the trial court's findings made under *Section 15.02(1)(E)* were supported by clear and convincing evidence. These points of error are overruled.

Due to our disposition of the above points of error, it is unnecessary for us to discuss, in detail, appellant's point of error which contends that the evidence is insufficient to support the trial court's findings made pursuant to *Section 15.02(1)(B)*. We find sufficient evidence in the record to support these findings. This point of error is overruled.

The trial court's finding, made pursuant to *paragraph (2)* of the aforementioned statute, that termination is in the best interest of the child, is also supported by clear and convincing evidence. Both a psychologist and a child placement worker testified that, in their opinion, terminating appellant's parental rights to his child would be in the child's best interest. Appellant's fifth point of error is, therefore, overruled.

▇ Appellant's remaining point of error states:

"The trial court erred in entering findings of fact supporting termination upon grounds not pled and which were not entered in the decree of termination."

We find it difficult to understand this apparently straightforward point of error because appellant admits that the grounds complained of as being unpled were in fact pled, in the State's first amended petition. Upon perusing appellant's brief under this point, we believe that appellant is contending that three specific fact findings, made by the trial court in the "Findings of Fact and Conclusions of Law", were used by the trial court to "support endangerment under § 15.02(1)(E)", and that these findings do not, in fact, support a finding under that

statutory section. The findings in issue relate to abandonment, neglect of the child after placing him with others and non-support of the child despite ability.

We do not find any indication that the trial court necessarily used these three findings to support endangerment under *paragraph (1)(E)* nor that the trial court shirked any responsibility in making his findings of fact and conclusions of law on allegations which were not "probative" of the *paragraph (1)(E)* endangerment claim. Firstly, the decree does not confirm that the aforementioned findings corresponded to the court's conclusion of law on endangerment. The pertinent part of the court's decree of termination provides:

"The Court finds that [J.D.H.] has voluntarily left the child in the possession of another not the parent without expressing an intent to return, without providing for the adequate support of the child, and remained away for a period of at least three months [*paragraph (1)(B)*]; and has knowingly engaged in conduct which endangers the physical and emotional well-being of the child; and has by voluntarily engaging in a pattern of criminal conduct such as committing the offense of indecency with a child. knowingly engaged in conduct which endangers the emotional well-being of the child [*paragraph (1)(E)*]."

Secondly, many of the statutory fact situations set out in *Section 15.02(1)*, in certain instances, overlap; for example, in relation to the case at bar, abandonment, neglect, and non-support of the child despite ability is obviously clear and convincing evidence of the conduct proscribed under *paragraph (1)(B)*, voluntarily leaving the child in the possession of another not the parent without expressing an intent to return, without providing for the adequate support of the child, and remaining away for a period of at least three months, as well as clear and convincing evidence of conduct which endangers the physical or emotional well-being of the child under *paragraph (1)(E)*. We cannot agree with appellant that

"[n]one of the findings ... deals with endangering conduct of the Appellant."

 Thus, we do not believe that the trial court erred in applying the three fact findings in issue to satisfy either *subparagraph (B) or (E)* which he based the termination on under *Section 15.02(1).* But, if any question remains relating to this point of error, the rule to be followed in child custody cases is that technical rules of civil procedure, as to practice and pleading, are not of controlling importance, since the controlling factor is the best interests of the child. *Poulter v. Poulter,* 565 S.W.2d 107, 111 (Tex.Civ.App.—Tyler 1978, no writ); *Evans v. Tarrant County Child Welfare Unit,* 550 S.W.2d 144 (Tex.Civ.App.—Fort Worth 1977, no writ); *Ex parte Gallop,* 486 S.W.2d 836, 839 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.). It is because of our profound concern for the best interests of the child in issue that we have addressed this point of error, for we are not technically required to do so under *TEX.R.CIV.P. 90* because appellant failed to preserve the alleged error by objection. *Murray v. O & A Express, Inc.,* 630 S.W.2d 633, 636–637 (Tex. 1982); *Sherman v. Provident American Insurance Company,* 421 S.W.2d 652, 654 (Tex. 1967); *Rose v. Burton,* 614 S.W.2d 651, 652 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.). This point is overruled.

The judgment of the trial court is Affirmed.